**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| VERNETTA KAYE LUGRAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-02312 |
| | ) | |
| ELEVANCE HEALTH, INC. | ) | |
| F/K/A ANTHEM, INC., | ) | |
| **Serve Registered Agent:** | ) | |
|     CT CORPORATION | ) | |
|     334 North Senate Avenue | ) | |
|     Indianapolis, IN 46204 | ) | |
| | ) | |
| And | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| THE ELEVANCE HEALTH COMPANIES, INC., | ) | |
| F/K/A THE ANTHEM COMPANIES, INC., | ) | |
| **Serve Registered Agent:** | ) | |
|     The Corporation Company, Inc. | ) | |
|     112 S.W. 7th Street, Suite 3C | ) | |
|     Topeka, KS 66603 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff Vernetta Kaye Lugrand, by and through counsel, and for her causes of action against Defendants Elevance Health, Inc. f/k/a Anthem, Inc. and The Elevance Health Companies, Inc. f/k/a The Anthem Companies, Inc. for employment discrimination and retaliation under the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), states and alleges as follows:

## PARTIES

1. Plaintiff, Vernetta Kaye Lugrand is an individual residing at 25930 West 96th Street, Lenexa, Kansas, and she is still currently employed by Defendants as Staff Vice President since her original hire date by Defendants on or about April 11, 2011. Plaintiff is a 60-year-old African-American (Black) female.

2. Defendant Elevance Health, Inc. f/k/a Anthem, Inc. is a foreign for-profit corporation organized and existing under the laws of the State of Indiana, and doing business in the State of Kansas.

3. Defendant The Elevance Health Companies, Inc. f/k/a The Anthem Companies, Inc. is a foreign for-profit corporation organized and existing under the laws of the State of Indiana, doing business in the State of Kansas.

4. All of the acts, conduct, and omissions of Defendants were performed by their agents, representatives and employees while in the course and scope of their agency or employment.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as the acts complained of involve violations of Plaintiff's rights under federal law, specifically the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.* (Section 1981), and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").

6. Venue is proper within this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in the District, the unlawful employment practices are alleged to have been committed in this District, and the

Defendants have sufficient minimum contacts with this District so as to be considered residents in Kansas for the purposes of the federal venue statute.

## FACTUAL ALLEGATIONS

7. Plaintiff began her employment with Defendants as a Staff Vice President on or about April 11, 2011 and is currently still employed by Defendants in the same position.

8. At all times herein mentioned Plaintiff was an "employee" of Defendants within the meaning of Section 1981, and the ADEA and entitled to all the benefits and protections of those laws.

9. Defendants were the "employer(s)" of Plaintiff, jointly and severally, within the meaning of Section 1981, and the ADEA, as Defendants exercised significant control over material matters involving Plaintiff's terms and conditions of employment, including hostile, biased and discriminatory statements and actions, lesser compensation, denials of promotions, and/or demotions, and false accusations of performance issues.

10. Defendants are engaged in an industry affecting commerce and individually and collectively they employed 500 or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

11. Throughout her employment with Defendants, Plaintiff was subject to the control of Defendants as to the means and manner of accomplishing her work as an employee.

12. Defendants individually and/or jointly were "employer(s)" of Plaintiff within the meaning of Section 1981 and the ADEA.

13. Pleading in the alternative, Defendants operated collectively as a single integrated enterprise as the employer of Plaintiff.

14. Defendants operate their businesses in a joint and integrated manner such that they effectively are joint employers or an integrated enterprise.

15. On information and belief Defendants share management services such as check writing, personnel forms, policy manuals and filing of business reports with applicable state and federal agencies.

16. On information and belief Defendants share payroll and insurance programs; they share the services of certain managers and personnel; they share office space, equipment and storage; they share certain officers and/or directors, and effectively they operate as a single unit.

17. On information and belief Defendants have centralized control of labor relations in terms of centralized authority over labor and personnel policies, centralized legal management of labor and personnel issues, joint maintenance of personnel records and policies, and intra-organization transfers and promotions of personnel are common between and among Defendants.

18. On information and belief, Defendants share common ownership and financial control in that they share certain officers and directors and Defendants jointly control their finances, operations, policies and procedures.

19. Throughout Plaintiff's employment with Defendants, she was subjected to race, sex, and age discrimination in violation of her rights under Section 1981, ADEA, and Title VII. Plaintiff has a pending Charge of Discrimination with the EEOC, including claims of sex, age, race discrimination, and retaliation, and will later amend this Complaint to include the additional Title VII claims upon receipt of a Notice of Right to Sue. These illegal acts by Defendants adversely impacted the terms and conditions of Plaintiff's employment.

20. Throughout her employment, Plaintiff performed all duties of her position as required, exceeded the expectations of her positions and received praise and good comments about her work.

21. Plaintiff is a sixty (60) year old African-American (Black) female.

22. Beginning in or around October 2017, and continuing through the date of this Complaint, Plaintiff has experienced a hostile work environment, and a pattern and practice of discrimination based on her race, age, sex, and/or retaliation in the terms and conditions of her employment. This has taken the form of a discriminatory glass ceiling that has resulted in continual and repeated denials of promotional opportunities for Plaintiff and other African American managers, including particularly African American female managers, and the failure or refusal by Defendants' management to advance her careers, and the careers of other qualified African American and other minority managers.

23. Plaintiff is making these claims on her behalf, as well as on behalf of other African American women and men who have experienced the same or similar illegal employment practices.

24. In or around August 2016 through November 2020, Plaintiff was assigned and successfully led the Meridian Resource Company (Meridian). Meridian was and is a wholly-owned subsidiary of Defendants, and a business unit in Defendants' Diversified Business Group (DBG), which is now identified as Carelon, Inc.

25. The DBG was and is a group of seven (7) business units of Defendants, each led by a Management Leader. Six (6) of the seven (7) business unit Leaders were assigned the title and compensation/benefits of President, Senior Vice President, or Vice President. None of these business unit Leaders were African American men or women.

5

26. Plaintiff was the only DBG business unit Leader assigned the lesser title of Staff Vice President, and throughout her years of successfully leading Meridian, and to this date, she was compensated far below the other six (6) DBG business unit Leaders.

27. Over the years Plaintiff raised concerns with Defendants' management and Human Resources about the disparity between her title, responsibilities, and compensation compared to the other subsidiary business unit Leaders.

28. As Meridian's Leader, Plaintiff repeatedly requested Defendants' Human Resources to change her title from Staff Vice President, Finance, (which did not align to the responsibilities of a subsidiary Leader). Her requests to be treated fairly and consistently with her fellow DBG leaders, were ignored or rejected.

29. Throughout her years with Defendants, Plaintiff had repeatedly expressed interest in advancing her career through promotion to Vice President level positions, and other incremental promotions. Defendants have repeatedly failed or refused to afford Plaintiff the opportunity to move up into higher levels of management, although similarly situated non-African American, non-minority, younger, and/or male peers were so promoted.

30. In or around November 2020, Plaintiff was removed from her leadership role with Meridian, and placed in what was represented to be a leadership position in a companywide initiative called Fast Forward, working with the Program Integrity organization as a Value Stream Leader.

31. Plaintiff did not want to leave her position as Meridian's Leader, but was told by Defendants she had no choice. She was assured by management that the new position, leading the Program Integrity Value Stream in the Fast-Forward organizational structure, would be a good career move for Plaintiff given her interest in moving up into a Vice President position.

6

32. At the time she was removed from the Meridian leadership role Plaintiff was told by Defendants that she was selected for the Fast Forward role because she was identified as a "high potential, high performer" leader.

33. Contrary to Defendants' representations that the new Fast Forward position would be a positive career move, Defendants never allowed Plaintiff to become the Fast Forward Value Stream leader. Instead, Defendants placed a Caucasian Vice President, with no Program Integrity experience, as the initiative leader, and Plaintiff was named a "dedicated support" resource to the Caucasian Vice President.

34. Plaintiff's new Fast Forward position was in fact a demotion, whereby her duties and responsibilities were significantly diminished, and the position represented a serious setback to Plaintiff in her efforts to advance into higher levels of leadership.

35. Plaintiff expressed her concerns to Human Resources, Dr. Prakash Patel, Executive Vice President and President of Diversified Business Group, Jeff Gartland, President Advanced Analytics, and other management regarding her Fast Forward demotion and her diminished role in that position, and she requested assistance in finding a promotion into a true leadership opportunity in the Defendants' organization.

36. Defendants failed or refused to identify or select Plaintiff for a suitable leadership position. Instead Defendants recommended two positions in DBG, one was a demotion to a director level position, and the other was a lateral move with significantly less responsibility than Plaintiff's leadership role with Meridian.

37. After over eleven (11) years with Defendants, Plaintiff remains a Staff Vice President, M16 job grade, the same title and job grade she had as a new hire, despite her many

years of strong performance ratings, reviews, and her designation as a "high performer, high potential."

38. While Plaintiff has been repeatedly denied the opportunity to advance in management, Defendants have continually hired and promoted less qualified non-African American, non-minority, younger and/or male managers to higher levels of management.

39. While Plaintiff has been repeatedly denied the opportunity to advance in management, Defendants have continually promoted younger, non-minority, and/or male "high performer, high potential" managers into higher level leadership positions. It is extremely rare, if not unheard of, for a non-African American, non-minority "high performer, high potential" manager to remain in the same job title and job grade level for 10 or more years.

40. In or around December 2020, Plaintiff again reported her concerns to Defendants about being treated differently, and being repeatedly denied promotional opportunities because of her race, to the Vice President of Emerging Businesses & Partnerships. Defendants took no action to address these concerns.

41. In or around February 2022, Plaintiff met with Ruchi Jalla, Vice President and Chief DEI Officer and Melissa Morris, Staff VP DEI to again share her concerns regarding the lack of African American females selected for promotional opportunities at the Staff Vice President and Vice President levels. Again, Defendants took no action to address these concerns.

42. Throughout her employment with Defendants, Plaintiff experienced a hostile, discriminatory, and retaliatory work environment including a pattern and practice of disparate treatment in the terms and conditions of her employment based on race, age, sex, and/or retaliation due to her complaints of discrimination.

43. Defendants' adverse illegal discriminatory and retaliatory actions against Plaintiff included hostile, biased, and discriminatory statements and actions, lesser compensation, denials of promotions, and/or demotions, false accusations of performance issues, and other adverse actions impacting the terms and conditions of her employment.

44. These adverse actions were taken without any legitimate reason and in violation of the law, and less-qualified non-minority, younger, and/or male employees who had not complained about or participated in complaints or investigations of discrimination were treated more favorably.

45. During Plaintiff's employment with Defendants, she and similarly situated African American, minority, female, and/or older employees were subjected to an ongoing pattern and practice of discrimination in the terms and conditions of employment including, but not limited to, hostile, biased and discriminatory statements and actions, lesser compensation, denials of promotions, and/or demotions, false accusations of performance issues that were based on race, age, sex, and/or retaliation for engaging in protected activities.

46. The true reason(s) for the illegal treatment of Plaintiff in the terms and conditions of her employment were illegal race, sex, and age discrimination, and/or retaliation against her for her complaints of discrimination or participation in an investigation of complaints of illegal discrimination and retaliation.

47. On May 3, 2022, Plaintiff filed a timely charge alleging race, sex and age discrimination and retaliation against Defendants with the Equal Employment Opportunity Commission ("EEOC") (copy attached as **Exhibit A**).

48. Plaintiff is awaiting a Notice of Right to Sue, and upon receipt will seek leave to amend this Complaint.

49. This case has been filed more than 60 days after Plaintiff filed her Charge of Discrimination with the EEOC.

50. Plaintiff has met all deadlines and has satisfied all administrative prerequisites to filing suit to date.

## COUNT I – RACE DISCRIMINATION (SECTION 1981)

51. Plaintiff incorporates by reference the allegations of paragraphs 1 through 50 above.

52. Plaintiff's race (African American) was a motivating and/or but for causal factor in Defendants' intentional decisions to discriminate against her in the terms and conditions of her employment, including, hostile, biased and discriminatory statements and actions, lesser compensation, denials of promotions, and/or demotions, and false accusations of performance issues.

53. The Defendants knew or should have known of the unwelcome race discrimination against their employees, including Plaintiff.

54. The Defendants failed to take prompt and appropriate corrective action to end the race discrimination against their employees, including Plaintiff.

55. The Defendants failed to make good faith efforts to enforce their policies to prevent race discrimination against their employees, including Plaintiff.

56. During Plaintiff's employment with Defendants, she and similarly situated employees were subjected to an ongoing pattern and practice of discrimination in the terms and conditions of employment including hostile, biased and discriminatory statements and actions, lesser compensation, denials of promotions, and/or demotions, false accusations of performance

issues, and continuing adverse actions as set forth herein through the date of this Complaint that were in fact based on race.

57. Defendants instead hired, promoted, retained, compensated and/or otherwise treated more favorably in the terms and conditions of their employment, less-qualified non-African American, non-minority, employees, all while articulating false reasons for the adverse job actions against Plaintiff.

58. The Defendants' conduct was outrageous as it maliciously or recklessly violated Plaintiff's rights under Section 1981, and is sufficiently culpable to warrant an award of punitive damages.

59. As a direct result of the Defendants' illegal and discriminatory actions, Plaintiff has sustained damages in the form of lost wages and benefits and other monetary damages associated with loss of work and failure to promote or demotion, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendants, jointly and severally, on Count I, and requests an award of her actual damages, including but not limited to her lost wages and benefits and other monetary damages, with interest through the date of trial and thereafter, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to promotion to a Vice President or higher level of management, reinstatement, pre-judgment interest, post-judgment interest, and any such other relief as the Court deems just and proper.

## COUNT II – RETALIATION (SECTION 1981)

60. Plaintiff incorporates by reference the allegations of paragraphs 1 through 59 above.

61. Plaintiff had a good faith, reasonable belief that the Defendants were engaged in unlawful employment practices and violations of federal employment and civil rights law as set forth above, including race discrimination, and she reported the same to Defendants, and she participated in the investigation of alleged discrimination complaints.

62. Defendants retaliated against Plaintiff because of her opposition to unlawful employment practices and/or her reports of violations of the federal employment and civil rights by adversely impacting the terms and conditions of her employment, including, hostile, biased and discriminatory statements and actions, lesser compensation, denials of promotions, and/or demotions, false accusations of performance issues, and other adverse actions continuing through the date of this Complaint and negatively impacting the terms and conditions of her employment.

63. Defendants instead hired, promoted and retained less-qualified non-African American, non-minority employees who had not opposed violations of federal employment and civil rights law, all while articulating false reasons for the adverse job actions against Plaintiff.

64. These adverse actions were taken without any legitimate reason and in violation of the law and less-qualified non-African American, non-minority employees who had not complained about or participated in complaints or investigations of discrimination were treated more favorably

65. Plaintiff's opposition to the Defendants' unlawful employment practices and violations of federal civil rights and/or reports of violations of the federal employment and civil rights of Defendants' employees, including Plaintiff, was a motivating and/or but for causal

factor in the Defendants' decision to retaliate against her in the terms and conditions of her employment, including but not limited hostile, biased and discriminatory statements and actions, lesser compensation, denials of promotions, and/or demotions, false accusations of performance issues, and other adverse actions continuing through the date of this Complaint, as set forth above and incorporated herein.

66. The Defendants' conduct was outrageous as it maliciously or recklessly violated Plaintiff's rights under Section 1981, and is sufficiently culpable to warrant an award of punitive damages.

67. As a direct result of the Defendants' illegal and retaliatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendants, jointly and severally, on Count II, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial and thereafter, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to including but not limited to promotion to a Vice President or higher level of management, reinstatement, pre-judgment interest, post-judgment interest, and any such other relief as the Court deems just and proper.

## COUNT III – AGE DISCRIMINATION (ADEA)

68. Plaintiff incorporates by reference the allegations of paragraphs 1 through 67 above.

69. Plaintiff's age was a determining factor in Defendants' intentional decision to discriminate against her in the terms and conditions of her employment, including, hostile, biased and discriminatory statements and actions, lesser compensation, denials of promotions and/or demotions, and false accusations of performance issues.

70. The Defendants manifested their illegal age bias through age biased comments and actions as set forth herein, including but not limited to hostile, biased and discriminatory statements and actions, lesser compensation, denials of promotions, and/or demotions, false accusations of performance issues, while similarly situated, substantially younger employees were treated more favorably and not subjected to the same type of hostile and discriminatory comments, actions, and false performance criticisms.

71. Defendants knew, or should have known, of the age discrimination against their employees, including Plaintiff.

72. Defendants failed to take prompt and appropriate corrective action to end the age discrimination against their employees, including Plaintiff.

73. Defendants failed to make good faith efforts to enforce their policies to prevent age discrimination against their employees, including Plaintiff.

74. Defendants' conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under the ADEA, thus justifying an award of liquidated damages.

75. As a direct result of Defendants' illegal and discriminatory actions, Plaintiff has sustained, and will in the future sustain, damages in the form of past and future lost wages and benefits, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendants, jointly and severally, on Count III, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial and thereafter, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to promotion to a Vice President or higher level of management, reinstatement, pre-judgment interest, post-judgment interest, and any such other relief as the Court deems just and proper.

## COUNT IV – RETALIATION (ADEA)

76. Plaintiff incorporates by reference the allegations of paragraphs 1 through 75 above.

77. Plaintiff had a good faith, reasonable belief that she was being subjected to unlawful employment practices including disparate treatment by Defendants in the terms and conditions of her employment compared with similarly situated, substantially younger employees, and she reported the same to Defendants.

78. Defendants retaliated against Plaintiff because of her opposition to unlawful discriminatory employment practices including hostile, biased and discriminatory statements and actions, lesser compensation, denials of promotions, and/or demotions, false accusations of performance issues, while similarly situated, substantially younger employees were treated more favorably and not subjected to the same type of hostile and discriminatory comments and actions, and false performance criticisms.

79. Plaintiff's opposition to unlawful discriminatory employment practices was a determining factor in Defendants' decision to subject her to adverse employment actions including those actions set forth above and herein.

80. Defendants' conduct was willful and/or outrageous as it intentionally and knowingly violated Plaintiff's rights under the ADEA, and is sufficient therefore to warrant an award of liquidated damages.

81. As a direct result of Defendants' illegal and retaliatory actions, Plaintiff has sustained, and will in the future sustain, damages in the form of past and future lost wages and benefits, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendants, jointly and severally, on Count IV, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial and thereafter, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to promotion to a Vice President or higher level of management, reinstatement, pre-judgment interest, post-judgment interest, and any such other relief as the Court deems just and proper.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the trial site for this case.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**SIRO SMITH DICKSON PC**

By /s/ Rik N. Siro
    Rik N. Siro         KS FED #77812
    Eric W. Smith       KS #16539
    Ryan P. McEnaney   KS FED 78827
    Amy R. Jackson     KS #28169
    1621 Baltimore Avenue
    Kansas City, Missouri  64108
    816.471.4881 (Tel)
    816.471.4883 (Fax)
    rsiro@sirosmithdickson.com (email)
    esmith@sirosmithdickson.com (email)
    rmcenaney@sirosmithdickson.com (email)
    ajackson@sirosmithdickson.com (email)

**ATTORNEYS FOR PLAINTIFF**